**SO ORDERED.**

**SIGNED this 24 day of May, 2010.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| CASTLE HORIZON REAL ESTATE, LLC, | 09-05992-8-JRL |
| DEBTOR. | Chapter 11 |

## ORDER

The matters before the court are First Citizens Bank's notice of default and motion to lift the automatic stay, provide adequate protection or, in the alternative, relief that will alienate title to property of the estate. A hearing was held in Raleigh, North Carolina on May 13, 2010.

## BACKGROUND

On July 20, 2009, the debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The debtor's sole asset is 133.8 acres of real property, unimproved but for one single-family residence, located at exit 373 of Interstate 40 in Duplin County, North Carolina ("the property"). First Citizens Bank ("First Citizens" or "the bank"), as successor-in-interest to Temecula Valley Bank, is the holder of a promissory note executed by the debtor in the original principle amount of $900,000, secured by a first-priority lien on the property. Upon the debtor's default under the note, a foreclosure sale of the property was held at which the bank placed the highest bid at $514,229. This case was filed during the statutory upset bid period. At

the time this motion was filed First Citizens asserted that the outstanding balance due under the note was $1,092,380.23. No payments have been made to the bank since August 2008.

The debtor filed its proposed plan of reorganization on December 18, 2009, within the 90-day period prescribed by 11 U.S.C. § 362(d)(3). Essentially, the plan proposes to market the property for sale over an 18-month period, during which interest will accrue on the note but not be paid, and the majority of creditors will be paid in full from the net sale proceeds. Plan confirmation was postponed to allow the debtor to find a buyer to purchase the property on terms agreeable to the bank. On April 22, 2010, a hearing was held to address confirmation of the debtor's proposed plan and First Citizens' motion for relief from stay. All creditors, with the exception of First Citizens, cast ballots in favor of the proposed plan. At the hearing, the parties announced a tentative agreement, whereby the debtor would sell the 30 acres along the highway for $675,000 and First Citizens would net $600,000 in satisfaction of its claim. It was agreed that the buyer would tender $10,000 of escrow money the next day and the matters would be continued for two weeks until the bank could meet to formally approve the agreement. First Citizens ultimately rejected the proposal. Now the bank seeks relief from the automatic stay to proceed with foreclosure or, in the alternative, authority for the debtor to tender to the bank a deed in lieu of foreclosure.[1]

## DISCUSSION

Section 362 of the Bankruptcy Code provides that a debtor's bankruptcy petition automatically stays "any act to obtain possession of . . . or to exercise control over property of

---

[1] First Citizens' notice of default pertains to the deposit of the escrow monies, which were transmitted, but not received, on April 23. The funds arrived on April 26. However, the issue is moot because the bank did not approve the settlement.

the estate," as well as "any act to collect . . . or recover a claim against the debtor that arose before the commencement of the case . . . ." 11 U.S.C.A. § 362(a). However, the court may terminate the automatic stay – (1) for cause, including lack of adequate protection of a property interest; (2) if the debtor has no equity in the property and the property is not necessary to an effective reorganization; or (3) in a single asset real estate case, 90 days after filing unless the debtor files a plan of reorganization that "has a reasonable possibility of being confirmed within a reasonable time," or if the debtor "has commenced monthly payments that are in an amount equal to interest . . . on the value of the creditor's interest in the real estate." Id. § 362(d)(1)-(3).

First Citizens argues that it is entitled to relief from stay under all three prongs of § 362(d). First, the bank argues that cause exists to lift the stay because its interest in the collateral is not adequately protected. Second, First Citizens asserts that there is no equity in the property and that the property is not necessary for an effective reorganization because the debtor has no reasonable possibility of successfully reorganizing. Finally, the bank contends that this single asset real estate case should be dismissed because the debtor has no ongoing operations and no prospect for a viable reorganization. In response, the debtor asserts that the automatic stay should not be lifted because First Citizens interest in the collateral is adequately protected, the proposed plan of reorganization is feasible and confirmable, and the debtor is willing and able to pay interest at the contract rate according to § 362(d)(3).

At hearing, First Citizens presented credible testimony from appraisers whom the bank commissioned to conduct appraisals of the property.[2] Their testimony revealed that the value of

---

[2] The bank commissioned appraisals of the land in March and November of 2009. The residence was appraised independently in November 2009.

the property rose from approximately $4,500 per acre in March 2009 to $6,000 per acre by the end of the year. On November 25, 2009, the raw land appraised at $796,000 and the residence at $95,000 for a combined value of $891,000. On cross-examination, the debtor sought to establish that the collateral's value had further increased since the November appraisal but presented no concrete evidence to establish a higher value.

      In addition to the testimony of the debtor's principals, who affirmed the debtor's intent to sell the most valuable portion of the property to pay its creditors in full and provided evidence of the debtor's ability to make interest payments under the note, the debtor relied on the testimony of Woodrow Brison, Jr. ("Brison"), a consultant hired to assist the debtor in finding an investor to purchase the property. Brison was the Economic Development Director for Duplin County from July 1984 through January 2008 and has been a licenced real estate broker since 1984. His testimony established that he remains intimately familiar with and involved in economic development in Duplin County. Brison asserts that the reason no commercial development has taken place around exit 373, the interchange of Interstate 40 and Highway 903, is because sewer access is unavailable. However, Duplin County is in the process of obtaining financing to establish sewer service along Highway 903, from an area east of exit 373 to the town of Magnolia. Brison professes to be 99% confident that sewer will be available within the next 18 months. His testimony is consistent with the affidavit of Albert V. Lewis, Jr., filed with the court on May 10, 2010 by First Citizens, which opines that the likelihood of obtaining funding for the sewer project is roughly 70% to 90% and, assuming that the funding is approved by July 1, 2010, that the project will be complete by December 2011. In his role as consultant, Brison is negotiating with a number of gas stations, fast-food chains, family-style restaurants, and a hotel

chain to develop the land along the interchange contingent on the availability of sewer access.

The court finds that First Citizens is not entitled to relief under § 362(d). While the appraisals establish that the value of the property is $891,000, and thus that the debtor has no equity in the collateral, they also indicate that property is slowly appreciating in value. As such, First Citizens does not lack adequate protection because its interest in the collateral is not diminishing. Based on the appraisal value and the prior ballot summary, it appears likely that the debtor's proposed plan can be confirmed over the bank's objection. Furthermore, Brison's testimony suggests that the prospect of the debtor's successful reorganization is optimistic. The court finds merit in Brison's assertion that no commercial development has taken place at exit 373 because of the lack of sewer service. Approval of funding for the sewer project is imminent and, if successful, should lead to a rapid increase in the marketability of the property for commercial development. With a feasible chapter 11 plan on the table and a willingness and ability to make interest payments going forward, the court finds no basis to grant the requested relief.[3]

Based on the foregoing, First Citizens' motion for relief from stay is DENIED, and it is hereby ordered that the debtor shall commence monthly payments at the contract rate of interest beginning in May and continuing through plan confirmation.

**"END OF DOCUMENT"**

---

[3] The court also takes notice of the fact that the bank is unwilling to accept $600,000 in satisfaction of its claim, an amount greater than that brought at the foreclosure sale, preferring instead to take title to the property. This supports the court's conclusion that the property is increasing in value and could bring a sale price sufficient to fund the debtor's chapter 11 plan.